UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL CHARLES REED,<br><br>Petitioner,<br><br>v.<br><br>MICHAEL BABCOCK, Warden,<br><br>Respondent. | No. 2:13-cv-2450 AC<br><br><br><br>ORDER |

Petitioner is a federal prisoner currently incarcerated at the Federal Correctional Institution in Herlong, California, in the Eastern District of California. He seeks relief, pursuant to 28 U.S.C. § 2241, from a prison disciplinary finding that resulted in the forfeiture of good conduct time credits. ECF No. 1. Respondent has answered on the merits. ECF No. 9. Petitioner filed a reply. ECF No. 10.

## FACTUAL AND PROCEDURAL BACKGROUND

Petitioner is serving a 240 month sentence for drug-related offenses. On December 29, 2012, while petitioner was incarcerated at the Camp attached to the Federal Correctional Institution in Big Springs, Texas, a special inmate count was conducted at 7:00 p.m. One inmate was unaccounted for, so a "bed book count" was conducted at 7:10 p.m., and it was determined that petitioner was missing. All inmates with the exception of petitioner reported to their dorms in response to the search announcement. A second bed book count was conducted with the same

1

1  result. The entire Camp was searched, and petitioner was not located. At 9:20 p.m., petitioner
2  entered the Camp Office and told the officer that he had been asleep in the television room. An
3  incident report charged petitioner with a violation of BOP prohibited act code 102, escape. ECF
4  No. 1 at 22 (Incident Report).
5      A hearing was held before a Disciplinary Hearing Officer ("DSO") on January 10, 2013.[1]
6  The DSO considered witness statements, a lieutenant's log, a "583 report," staff
7  memorandumranda, and an escape flyer as well as the statement of the petitioner and that of the
8  reporting officer. The DSO found that petitioner was guilty of prohibited act code 200, a less
9  serious type of escape involving voluntary return within four hours. The DSO imposed sanctions
10 as follows: disallowance of 27 days good conduct time, 60 days of disciplinary segregation, 120
11 days loss of commissary privileges and 120 days of telephone restriction. ECF No. 1 at 31-34
12 (Disciplinary Hearing Officer Report).
13     Petitioner filed an administrative appeal with the Regional Director, who found sufficient
14 evidence to support the escape finding and denied the appeal. ECF No. 1 at 36 (Response of
15 Regional Director). Petitioner then appealed to the BOP's Central Office for Inmate Appeals.
16 The Central Office sent petitioner a receipt acknowledging that his appeal had been received on
17 May 20, 2012, and stating that a response to the appeal was due on June 29, 2013. ECF No. 1 at
18 41 (Receipt). Petitioner was subsequently notified that the time to respond to his appeal was
19 extended to July 19, 2013. ECF No. 1 at 43 (Extension of Time for Response). No formal
20 response to the appeal was issued.[2] Petitioner filed an "affidavit of default" with the Central
21 Office, dated August 8, 2013, contending that the failure to timely respond to his appeal required
22 expungement of the disciplinary finding and restoration of his good time credits. ECF No. 1 at
23 45, 48-53 (Affidavit of Default). The Central Office sent petitioner a form letter dated August 22,
24 2013, explaining that the absence of response constituted a denial. ECF No. 1 at 55
25     This § 2241 petition followed.

---

[1] The matter was first considered by the Unit Discipline Committee.
[2] Under the applicable BOP regulations, which are discussed more fully below, the absence of a response within the time provided constitutes a denial of the appeal.

2

1                              PETITIONER'S CLAIMS

2       Petitioner presents three claims: (1) that his due process rights were violated by the

3 imposition of sanctions for a prohibited act different than the one charged; (2) that the

4 disciplinary finding was not supported by "some evidence" that petitioner actually escaped from

5 the custody of BOP; and (3) that the failure of BOP officials to respond to his appeal constitutes a

6 "default" requiring relief from the sanctions imposed by the hearing officer.  Respondent

7 acknowledges that petitioner has exhausted his administrative remedies as to all three claims.  See

8 ECF No. 9 at 3-4 (citing Martinez v. Roberts, 804 F.2d 570, 571 (9th Cir. 1986)).  Respondent

9 also agrees that the disallowance of good conduct time credits, imposed as a sanction for the

10 challenged disciplinary violation, affects the computation of petitioner's sentence.  Id. at 4.  This

11 nexus between the challenged disciplinary decision and the duration of petitioner's confinement

12 supports this court's exercise of jurisdiction.  See Docken v. Chase, 393 F.3d 1024, 1031 (9th Cir.

13 2004).  Accordingly, the court turns to the merits of petitioner's claims.

14                                   DISCUSSION

15    I.    Due Process Does Not Forbid The Downgrading Of A Disciplinary Charge

16       Petitioner contends that he was not given advance notice of the charge of which he was

17 found guilty, in violation of Wolff v. McDonnell, 418 U.S. 539 (1974).  As the Supreme Court

18 held in Wolff, due process in the prison disciplinary context requires "advance written notice of

19 the claimed violation and a written statement of the factfinders as to the evidence relied upon and

20 the reasons for the disciplinary action taken."  Id. at 563.  The advance written notice of the

21 pending disciplinary charges should be provided "no less than 24 hours" prior to the disciplinary

22 hearing "in order to inform [the inmate] of the charges and to enable him to marshal the facts and

23 prepare a defense."  Id. at 564.[3]

24       Petitioner was initially charged with escape, prohibited act code 102, which is defined as

25 follows: "Escape from escort; escape from any secure or non-secure institution, including

---

[3] Wolff also specifies that inmates must be afforded the opportunity to call witnesses and present evidence, subject to some limitations.  Id. at 566.  Petitioner does not allege that he was denied the opportunity to present witnesses or evidence.

community confinement; escape form unescorted community program or activity; escape from outside a secure institution." 28 C.F.R. § 541.1, et seq. at Table 1 (2012) ("Table 1"), ECF No. 9-1 at 73.[4]

Petitioner alleges that he did not learn until several days after his hearing that he had been found guilty of a different prohibited act of escape, code 200. ECF No. 1 at 6-7. Code 200 is defined as follows: "Escape from a work detail, non-secure institution, or other non-secure confinement, including community confinement, with subsequent voluntary return to Bureau of Prisons custody within four hours." Table 1, ECF No. 9-1 at 75.

Prohibited acts are classified into four tiers, by severity level. Code numbers 100 et seq. are "Greatest Severity Level Prohibited Acts." Id. at 73-74. Code numbers 200 et seq. are "High Severity Level Prohibited Acts." Id. at 75-77.[5] The sanctions that may be imposed for 200 level prohibited acts are less severe than those that may be imposed for 100 level prohibited acts. Tables 1 & 2.[6] Presumably because voluntary return of an escapee within four hours reduces the severity level of an escape, a code 200 escape carries lesser penalties than a code 102 escape.[7]

In effect, petitioner objects to having been found guilty of a lesser related prohibited act. The Bureau of Prisons regulations that govern the disposition of disciplinary charges specifically permit a finding that the inmate committed an act similar to the one initially charged. The pertinent regulation provides as follows:

> (a) Available Dispositions. The DHO will make one of the following decisions after a hearing on the incident report:
>
> (1) You committed the prohibited act(s) charged, and/or a similar act(s) as described in the incident report. . . .

28 C.F.R. § 541.8(a)(1).

---

[4] Respondent has provided the text of BOP Program Statement ("P.S.") 5270.09, Inmate Discipline Program (eff. June 20, 2011), as Attachment 5 to the Declaration of Chris Ulrich. ECF No. 9-1 at 29-84. The Program Statement incorporates the text of the pertinent Federal Regulations. Tables 1 & 2 list the various prohibited acts and corresponding available sanctions.
[5] The 300 series are "Moderate Severity Level Prohibited Acts" and the 400 series are "Low Severity Level Prohibited Acts." ECF No. 9-1 at 78, 82.
[6] ECF No. 9-1 (Attachment 5 to Ulrich Dec.) at 73-78 (Table 1), 84 (Table 2).
[7] It is also worth noting that the lesser escape charge is available only if the escape was from a non-secure setting.

1    There may be circumstances in which a finding of a violation different than the one
2 initially charged would violate Wolff.  This is not such a case.  The due process inquiry turns on
3 the adequacy of the notice petitioner received regarding the charge, as measured by the
4 opportunity he was provided to prepare and present a defense.  See Wolff, 418 U.S. at 564
5 (purpose of notice requirement is "to inform [the inmate] of the charges and to enable him to
6 marshal the facts and prepare a defense.").  The incident report, which was served on petitioner
7 within 24 hours of the incident, set forth the facts to be proved at the hearing.[8]  These allegations
8 supported a charge of code 102 escape, which was specified on the incident report, and equally
9 supported the lesser charge of code 200 escape.  Petitioner's position regarding the alleged escape
10 was (and remains) that he had been on Camp grounds the whole time, oblivious to the bed counts
11 and the search.  He contended then, and contends now, that no evidence showed he was ever
12 outside the bounds of the facility or BOP custody.  This defense does not implicate the distinction
13 between code 200 escape and code 102 escape.  Nothing in the record suggests that petitioner's
14 defense at the hearing would have differed depending on whether the escape was charged as a
15 code 200 or a code 102.  The notice of the specific facts supporting an escape charge, and notice
16 of the most severe such charge that might be supported by those facts, provided petitioner with
17 exactly what Wolff requires.

18    Accordingly, petitioner is not entitled to relief on his first claim.

19  II.   The Disciplinary Finding Is Supported By "Some Evidence" Within the Meaning of
20        *Superintendent v. Hill*

21    Petitioner argues that the disciplinary finding violates due process because it is
22 unsupported by evidence that he had escaped.  A prison disciplinary charge need not be proved
23 beyond a reasonable doubt, or even by a preponderance of the evidence.  Due process requires

---

[8] "On 12-29-2012 at 7:00 pm, Lieutenant K. Bruer and I [were] conducting a special count at the Camp. We found that one inmate was missing. At 7:10 pm conducted a bed book count and found Inmate Reed, Michael #28753-177 was missing. We called Lieutenant R. Hernandez and notified him. We were asked to conduct second bed book count. We conducted the second bed book count with the same outcome. At Approximately 9:20 pm, Inmate Reed, Michael came into Camp office and told me that he was in the television room asleep." ECF No. 1 at 22 (Incident Report).

5

only that there be "some evidence" to support the charge. Superintendent v. Hill, 472 U.S. 445, 456 (1985). This is an extremely low standard. See Cato v. Rushen, 824 F.2d 703, 705 (9th Cir. 1987) (describing Hill standard as "minimally stringent"). Evidence susceptible to more than one logical interpretation is sufficient. See Hill, 472 U.S. at 457. Reviewing courts may not "examine the entire record, independently assess witness credibility, or reweigh the evidence." Bruce v. Ylst, 351 F.3d 1283, 1287 (9th Cir. 2003). Instead, the court must defer to prison authorities as long as "there is *any evidence* in the record that could support the conclusion reached" by the hearing officer. Hill, 472 U.S. at 455-46 (emphasis added).

The guilty finding here was supported by evidence that petitioner failed to report for three counts, and that a search of the Camp grounds did not locate him. Hill does not require more than the existence of some evidence from which guilt can be permissibly inferred. A finding that petitioner was guilty of escape (as defined by either code 102 or code 200) did not require affirmative evidence that he had been at a location outside the Camp's perimeter. Moreover, the hearing officer clearly did not believe petitioner's version of events, and this court may not revisit that credibility determination.

For these reasons, petitioner is not entitled to relief on his second claim.

III.     There Was No "Default" By BOP In The Administrative Appeal Process

Petitioner contends that the failure of the Inmate Appeals Central Office to issue a written denial of his appeal entitles him to expungement of the disciplinary finding and restoration of credits. Petitioner presents no legal basis for this theory, and the court cannot imagine one.

28 C.F.R. § 542.18 provides in relevant part, "If the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level." There has been no showing that this regulation, either on its face or as applied to petitioner, impairs due process or any other cognizable legal rights.

After petitioner sent his "Affidavit of Default," the Central Office responded with a check-the-box form memo that told petitioner two contradictory things: (1) that pursuant to policy, the absence of a response may be considered a denial, and (2) that "each appeal accepted by this office will [nonetheless] be responded to and you will be advised once the appeal is completed." ECF No. 1 at

55 (memorandum dated August 22, 2013). Respondent attempts to resolve the contradiction by arguing that petitioner should have interpreted the memo as notification that his appeal was not "accepted" by the Central Office, and therefore should be considered denied. ECF No. 9 at 11. Respondent may consider that interpretation a "logical conclusion," id., but the court does not. Petitioner had previously received notification that his appeal had been received, and subsequent notification that the deadline to respond had been extended, so he had every reason to think the appeal was "accepted" and would receive a response.

However, the confusion generated by the memorandum, and the Central Office's constructive denial of petitioner's appeal by silence, impaired no protected right of petitioner's. He had received a written statement of reasons for the disciplinary finding at the DHO level, as Wolff requires; he has no separate due process right to a written rejection of his appeal. Once the deadline for a response from Central Office passed, petitioner had successfully exhausted his administrative remedies. The procedural history of his administrative exhaustion process created no hurdles to judicial review. Accordingly, even if a regulation was violated, petitioner suffered no harm from the failure of Central Office to provide written notice that his appeal was denied.

There is no legal basis for the "default" rule that petitioner invokes here. This claim does not entitle him to relief.

## CONCLUSION

For all the reasons set forth above, the petition does not state facts establishing a violation of due process or otherwise entitling petitioner to relief. Accordingly, the petition for writ of habeas corpus is hereby DENIED.

DATED: April 14, 2015

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

7